**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **CHARLOTTE BABINEAU,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| **v.** ) | |
| ) | **No. 09-1363-JWL** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a final decision of the Commissioner of Social Security
(hereinafter Commissioner) denying supplemental security income (SSI) under sections
1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 1381a, and
1382c(a)(3)(A) (hereinafter the Act). Finding error as alleged by Plaintiff in the ALJ's
residual functional capacity (RFC) assessment and in the ALJ's failure to properly
determine whether the vocational expert testimony conflicted with the Dictionary of
Occupational Titles (DOT), the court ORDERS that the Commissioner's decision is
REVERSED, and that judgment shall be entered in accordance with the fourth sentence
of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this
opinion.

## I.  Background

Plaintiff applied for SSI on October 4, 2006 alleging disability since December 13, 2002.  (R. 16, 109-14).  The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge (ALJ).  (R. 16, 47-49, 65-66).  Plaintiff's request was granted, and Plaintiff appeared with counsel for a video hearing before ALJ Edward D. Steinman on May 21, 2009.  (R. 16, 24-46).  At the hearing, testimony was taken from Plaintiff and from a vocational expert.  (R. 16, 24-25).  On June 3, 2009, ALJ Steinman issued a decision finding Plaintiff was not disabled within the meaning of the Act, and denying her application.  (R. 16-23).  Plaintiff disagreed with the decision and requested Appeals Council review.  (R. 8-12).

Plaintiff's request was granted, Plaintiff provided an additional brief to the Council, and the Appeals Council issued a "Decision of the Appeals Council" on October 23, 2009.  (R. 4-7, 105-08, 223-24).  The Appeals Council adopted the ALJ's statements regarding the applicable law, the issues presented in the case, and the findings of fact.  (R. 4).  It adopted the ALJ's conclusion that Plaintiff is not disabled, and agreed with the ALJ's findings under steps 1, 2, 3, 4, and 5 of the sequential evaluation process.  Id. at 4-5.  However, the Appeals Council noted that Plaintiff had attained age 50 and became a "person closely approaching advanced age" on June 3, 2007, but that the ALJ did not address that issue.  Id. at 5.  The Council used Medical-Vocational Guidelines Rule 202.14 as a framework for decision-making and determined that there exists a significant number of jobs in the national economy of which Plaintiff is capable, and that she has not

been disabled within the meaning of the Act at any time after she filed her application, even after she attained age 50. (R. 5-6). Therefore, the Council denied Plaintiff's application. Id. at 6. The Appeals Council's decision is the final decision of the Commissioner; Fierro v. Bowen, 798 F.2d 1351, 1353-55 (10th Cir. 1986); see also, 20 C.F.R. § 416.1400(a) (Appeals Council is final decision-making body); and Plaintiff timely filed a complaint in this court seeking judicial review of that decision. (Doc. 1).

## II.    Legal Standard

The court's jurisdiction and review are guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1051-52 (10th Cir. 2009) (citing 42 U.S.C. § 405(g)); see also, 42 U.S.C. § 1383(c)(3) (final decision in an SSI case "shall be subject to judicial review as provided in section 405(g) of this title"). Section 405(g) of the Act provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but less than a preponderance, and it is such evidence as a reasonable mind might accept to support a conclusion. Wall, 561 F.3d at 1052; accord, Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)). The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step, sequential process to evaluate disability. 20 C.F.R. § 416.920 (2009); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Lax, 489 F.3d at 1084 (quoting Williams, 844 F.2d at 750).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment, and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. If the claimant's impairments do not meet or equal a listed impairment, the Commissioner assesses RFC. 20 C.F.R. § 416.920(e). This assessment is used at both step four and step five of the sequential process. Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five-- whether claimant can perform her past relevant work, and whether, when considering vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (citing Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show jobs in the national economy within Plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff alleges four distinct errors in the ALJ's decision. She alleges the ALJ erred (1) in evaluating the medical opinions: of Dr. Abu-Libdeh, Dr. Klontz, and Dr. Anderson; and of the state agency physicians who reviewed the record at the initial and reconsideration review; (2) in failing to provide a proper narrative discussion of the RFC assessment; (3) in determining the credibility of Plaintiff's allegations of symptoms

resulting from her impairments; and (4) in securing and evaluating the vocational expert (VE) testimony. The Commissioner opposes each allegation of error, and argues that the ALJ applied the correct legal standard and that substantial evidence on the record as a whole supports the Commissioner's decision. The court finds error requiring remand as alleged in arguments two and four above, and will not address the other errors alleged.

As a preliminary matter, the court notes that Congress has granted the court jurisdiction to review only a "final decision of the [Commissioner of Social Security] made after a hearing." <u>Califano v. Sanders</u>, 430 U.S. 99, 108 (1977); (quoting 42 U.S.C. § 405(g)); <u>accord</u>, <u>Reed v. Heckler</u>, 756 F.2d 779, 782 (10th Cir. 1985) ("42 U.S.C. § 405(g) . . . provides the only means of judicial review and requires a final decision . . . as a jurisdictional prerequisite."); <u>see also</u> 42 U.S.C. § 1383(c)(3) (final decision in an SSI case "shall be subject to judicial review as provided in section 405(g) of this title") . As the Commissioner specifically pointed out, and as the court noted above, the "Decision of the Appeals Council" is the "final decision" in this case. (Comm'r Br. 2). Plaintiff's brief detailed the progress of this case before the Commissioner, noted that the Appeals Council "issued an unfavorable decision," and argued that Plaintiff "has, therefore, exhausted her administrative remedies and seeks relief from this Court." (Pl. Br. 2). Thereby, Plaintiff tacitly admits that the Council's decision is the "final decision." However, without explanation of the basis for doing so, Plaintiff predicates each error alleged upon the actions and the decision of the ALJ. <u>Id.</u> at 11-33. The Commissioner's brief is responsive to each alleged error attributed to the ALJ (also without discussion of

the basis for doing so), and argues that the ALJ applied the correct legal standard, and that the record evidence supports the ALJ's analyses. (Comm'r Br. 8-25).

Properly considered, this is not the correct application of the court's jurisdiction. The court's review is limited to the "final decision" of the Commissioner--in this case, the "Decision of the Appeals Council." Nonetheless, the court finds that the Appeals Council adopted the ALJ's statements regarding the applicable law, the issues presented in the case, and the ALJ's findings of fact; and, it adopted the ALJ's conclusion that Plaintiff is not disabled, and agreed with the ALJ's findings under steps 1, 2, 3, 4, and 5 of the sequential evaluation process. Id. at 4-5. Each error alleged by Plaintiff deals only with these findings and conclusions of the ALJ (adopted or agreed with by the Appeals Council), and Plaintiff does not allege error in the Council's additional application of the framework of the Medical-Vocational Guidelines. Therefore, although in this opinion the court specifically reviews the findings and conclusions of the ALJ, it only does so because those findings and conclusions have been adopted in the final "Decision of the Appeals Council."

## III.     The ALJ's RFC Assessment

Plaintiff claims the ALJ failed to adequately explain his RFC assessment. In large part she argues this is so because the ALJ erred in weighing the medical opinions and in determining the credibility of Plaintiff's allegations. She argues that the ALJ's analysis of the medical opinions and his finding that Plaintiff's allegations are not credible fail to explain how he arrived at each RFC limitation eventually assessed. (Pl. Br. 19-22).

Because these arguments are based upon Plaintiff's allegations of error in evaluating the medical opinions and the credibility of Plaintiff's complaints, the court will not specifically address them here except to note that an ALJ is not required to state each limitation in his RFC assessment, state the record evidence relied upon in assessing that limitation, and then explain specifically how that particular limitation was reached based upon the evidence upon which he relied. He is merely required to explain his decision in a manner that is capable of meaningful judicial review. Wall, 561 F.3d at 1068-69 (noting that a "bare conclusion [is] beyond meaningful judicial review" whereas a discussion "in some detail" allows for meaningful review) (citing Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996) ("bare conclusion . . . beyond meaningful judicial review); and Fisher-Ross v. Barnhart, 431 F.3d 729, 730 (10th Cir. 2005) (rejecting "a construction of Clifton that . . . would lead to unwarranted remands needlessly prolonging administrative proceedings")).

Plaintiff also argues, "The ALJ's RFC discussion consists only of his reasons for discounting Babineau's testimony and his reasons for weighing some of the medical opinions. This is insufficient to meet the requirements of SSR [Soc. Sec. Ruling] 96-8p or to make his findings 'capable of meaningful review.'" (Pl. Br. 20) (citing Brant v. Barnhart, 506 F. Supp. 2d 476, 485-86 (D. Kan. 2007)). Later she explains:

> The ALJ's RFC discussion includes only his discussion of the medical opinions and Babineau's testimony. He failed to discuss any other evidence. He claimed to incorporate his analysis of Babineau's non severe impairments in his RFC discussion, but the decision fails to include any analysis of non severe impairments. The only impairments he considered at

step two were those he found to be severe.  Thus, it appears that the ALJ
considered only Babineau's testimony and the medical opinions when
assessing Babineau's RFC.  This is a direct conflict with the requirements
of SSR 96-8p which requires the ALJ to consider all of the evidence.

(Pl. Br. 22-23) (citations to the record omitted).

The Commissioner notes that the ALJ stated he had considered all of the evidence,

and that the court's usual practice in such a case is to take the ALJ at his word.  (Comm'r

Br. 20) (citing Wall, 561 F.3d at 1070).  He argues that "the ALJ provided sufficient

support for his RFC assessment," id., and "considered Plaintiff's subjective allegations,

the medical records, and the medical opinion," and "It is unclear what other evidence the

ALJ should have considered."  Id. at 21.

As Plaintiff argues, the ALJ's RFC discussion included a summary of Plaintiff's

allegations of disabling limitations, the ALJ's credibility analysis, and a summary of the

medical opinions with the ALJ's analysis of the weight accorded each medical opinion.

(R. 19-21).  The ALJ cited medical treatment records only in support of his conclusions:

that "Mental status exams show no evidence of any cognitive deficits;" that "Physical

exams show very little abnormal clinical findings other than tenderness and trigger points,

and some reduced range of motion of the lumbar spine," (R. 19); that Dr. Abu-Libdeh's

"opinion is not supported by clinical findings or other objective findings in his progress

notes," (R. 20); that Dr. Klontz's opinion is "more restrictive than the treating records

from the Family Life Center that show mostly normal mental status exams" and is

"consistent with the claimant's GAF scores."  (R. 21).  In his step two severity analysis,

the ALJ cited medical treatment records only in support of his broad conclusions that Plaintiff "has been evaluated and treated for joint disease," "underwent arthroscopic surgery of the left knee," and "has been evaluated and treated for moderate depressive and anxiety symptoms." (R. 18). Otherwise, the ALJ cited and summarized only the medical opinions. (R. 20-21). The ALJ did not summarize any of Plaintiff's medical treatment records other than by way of his broad conclusions that Plaintiff had arthroscopic surgery and has been "evaluated and treated" for certain impairments. Moreover, he did not point to specific evidence from the medical records which was inconsistent with or demonstrated that the medical opinions were unsupported.

As Plaintiff's brief suggests, the ALJ stated, "The analysis of the claimant's nonsevere impairments, supra, is incorporated by reference herein." (R. 19). However, the court is unable to locate any analysis of nonsevere impairments. In his step two severity analysis, the ALJ mentioned only joint disease, fibromyalgia, status post knee surgery, depressive disorder, and anxiety disorder. (R. 18). Each of these impairments was found by the ALJ to be severe. Id. In his step three analysis, the ALJ stated, "I find that the claimant's medically determinable impairments, alone or in combination, do not meet or medically equal any listing." Id. But, he did not mention any medically determinable impairments other than the severe impairments identified at step two. This discussion and analysis is inadequate for the court to engage in meaningful judicial review of the RFC assessment. The court cannot know what the ALJ was considering.

While an ALJ need not discuss every piece of evidence, he must consider all of the evidence.  Clifton, 79 F.3d at 1009-1010.  He must discuss the evidence supporting his decision, the uncontroverted evidence he chooses not to rely upon, and significantly probative evidence he rejects.  Id., 79 F.3d at 1010.  The Commissioner has promulgated regulations regarding RFC assessment.  20 C.F.R. § 416.945-946.  In assessing RFC, the Commissioner is to consider a claimant's abilities to meet the demands of work despite his impairment(s).  Id. at § 416.945.  The assessment is to be based upon all relevant evidence in the record and is to include consideration of the limitations caused by all of the claimant's impairments, including impairments which are not "severe" as defined in the regulations.  Id. at § 416.945(a & e).  The assessment is to consider physical abilities, mental abilities, and ability to tolerate various work environments.  Id. § 416.945(b, c, d).

The Commissioner issued SSR 96-8p "[t]o state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits."  West's Soc. Sec. Reporting Serv., Rulings 143 (Supp. 2009).  The Ruling includes narrative discussion requirements.  Id. at 149.  "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  Id.  It must include an explanation how any ambiguities and material inconsistencies in the evidence were considered and resolved.  Id.  The narrative discussion must include consideration of the credibility of plaintiff's allegations of symptoms and consideration of

opinions regarding plaintiff's capabilities.  Id. at 149-50.  If the ALJ's RFC assessment conflicts with a medical source opinion, the ALJ must explain why she did not adopt the opinion.  Id. at 150.

Social Security Rulings are binding on all components of the Social Security Administration.  20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9 (1990); see also, Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993) ("The agency's rulings are binding on an ALJ.").  When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, his RFC conclusions are not supported by substantial evidence.  See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. 2003).

In making his RFC assessment, it is insufficient for the ALJ to simply summarize the evidence, but to fail to relate it to his conclusions.  Tracy v. Barnhart, 518 F. Supp. 2d 1291, 1298-99 (D. Kan. 2007); accord, Cruse v. Dep't. of Health & Human Servs., 49 F.3d 614, 618 (10th Cir. 1995) (ALJ generally discussed the evidence but did not relate it to his conclusions).  The ALJ's decision must be "sufficiently articulated so that it is capable of meaningful review."  Spicer v. Barnhart, 64 Fed. Appx. 173, 177-78, 2003 WL 21000999, *5 (10th Cir. 2003).

Here, the ALJ stated he considered all of the evidence, and the court will take him at his word.  However, he did not cite specific medical facts and did not describe how the evidence supports his RFC assessment.  The ALJ did not sufficiently discuss the evidence

supporting his decision as required by Clifton. Apart from performing its own RFC assessment, the court has no way in these circumstances to discern what medical evidence the ALJ relied upon in assessing RFC, or determining how the evidence supports and leads to the RFC assessed. In these circumstances, the court must either blindly accept the analysis made in the ALJ's mind, or it must perform its own RFC assessment. Neither option constitutes meaningful judicial review of the Commissioner's decision. As noted above, the court will not require a limitation-by-limitation listing of the evidence relied upon in assessing each particular RFC limitation, with a separate explanation of how that limitation was reached based upon that evidence. However, the Commissioner must provide an explanation sufficient that a reviewing court may discern from the decision both the evidence relied upon and whether substantial evidence in the record as a whole supports the Commissioner's RFC assessment. Remand is necessary in this case for the Commissioner to provide a proper narrative, discussing the evidence supporting his RFC assessment, and "describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8p.

## IV.     Step Five Consideration of the Vocational Expert (VE) Testimony

Plaintiff alleges two errors in the ALJ's consideration of the VE testimony. First, she claims that the ALJ's hypothetical question did not relate with precision all of Plaintiff's limitations and, therefore, the ALJ may not rely upon VE testimony in response to the flawed hypothetical. Specifically, Plaintiff argues that the ALJ did not include a limitation to "simple and repetitive tasks" in his hypothetical question and did not include

13

mental limitations in combination with the physical limitations in his hypothetical question. (Pl. Br. 31). The Commissioner argues that the hypothetical question included each limitation in the RFC assessed by the ALJ, and the ALJ properly relied upon VE testimony in response to that hypothetical. The court agrees with the Commissioner.

The RFC assessed by the ALJ found Plaintiff able to "lift or carry 10 pounds frequently and 20 pounds occasionally; sit, stand, and walk for 6 hours out of an 8-hour workday, with an option to sit or stand at the claimant's option; avoid concentrated exposure to vibration; avoid exposure to hazards; need to be physically close to a rest room; mentally limited to simple and repetitive tasks with no public contact and limited contact with co-workers and supervisors." (R. 19). While the ALJ's hypothetical question is not the model of clarity, the court finds that it included all of the limitations assessed by the ALJ. (R. 41).

Plaintiff claims the hypothetical included mental limitations to nonpublic work and limited contact with peers and supervisors, but did not include a limitation to "simple and repetitive tasks." (Pl. Br. 31). Plaintiff's claim misunderstands the colloquy between the ALJ and the VE regarding "the fourth hypothetical." (R. 40-41). The court reproduces that exchange in full:

> Q    [By ALJ] Okay. And the fourth hypothetical is the assessment of William Kahns[1] Family Life (PHONETIC) in March of '09. Says marked only, want to pull that up, it's, it's in B23F because I may

---

[1]Exhibit B23F is the "Medical Source Statement - Mental" of Dr. William Klontz, of the Family Life Center. (R. 413-15).

need you to help evaluate this. It looks like marked only with closely working with others without distraction. It appears it can be simple repetitive nonpublic limited contact with coworkers. Then look at B23F and tell me based no [sic] your reading of their analysis to whether this person could sustain work?

A     [By VE] Well, it says moderately limited under understanding and memory, as well, is that the one you're talking about, B23F?

Q     Well, I'm talking about, yeah, B23F.

A     Okay.

Q     But take a look at the, all of --

A     Overall.

Q     -- overall picture.

A     Yeah, I just was making sure. When you mentioned that one thing --

Q     Yes, yes.

A     -- I was thinking, well, is that the only thing?

Q     No.

A     I got you.

Q     I need you to look at the totality of the assessment.

A     Whole. Oh, the only marked is in working with proximity to the others so that would not preclude work.

Q     So would she be essentially limited to simple repetitive nonpublic?

A     Yes.

(R. 40-41). As the transcript reveals, the ALJ understood the totality of Dr. Klontz's

opinion to limit Plaintiff to simple, repetitive, nonpublic work. When he asked the VE if

she understood the opinion to be the same, she responded, "Yes." Id. at 41.

The ALJ immediately continued the fourth hypothetical:

Q      Okay. All right, so <u>that being the case</u>, give me one moment,
        consider lifting and carrying 20/10, sit stand and walk 6 of 8 --

A      Uh-huh.

Q      -- with option to do either at claimant's option, no concentrated
        exposure to vibration nor hazards, need to be physically located near
        restroom.

CLMT:      [interjecting] Uh-huh.

BY ADMINISTRATIVE LAW JUDGE:

Q      And so put that in as nonpublic, limited contact with peers and
        supervisors. Would that, again, that wouldn't allow any of her prior
        work, right?

A      Because the (INAUDIBLE) medium.

Q      Right, correct, okay.

A      And her, her past work was semi-skilled as well.

Q      Okay. So of the 1400 light unskilled job titles in the grid, how many
        would remain for her? Obviously, I've excluded sedentary.

(R. 41) (emphasis added). Plaintiff appears to be arguing that the although the ALJ found

Dr. Klontz's opinion to limit Plaintiff to simple, repetitive, nonpublic work, he did not

include the restrictions to simple, repetitive work in the hypothetical. The transcript

reveals otherwise. As the court has emphasized in the quotation above, immediately after

16

the VE responded that Dr. Klontz's opinion limited Plaintiff to simple, repetitive, nonpublic work, the ALJ began his hypothetical by stating, "that being the case," indicating that he included those limitations in the hypothetical. Id. Plaintiff presents no argument why this natural understanding from the plain language of the colloquy should not control.

In her reply brief, Plaintiff argued that the ALJ repeated the limitation to nonpublic work after he stated the other limitations, thereby indicating that the limitations to simple and repetitive work, which were not repeated, were not included in the hypothetical. (Reply 7).  This understanding does not follow from the plain language and natural understanding of the colloquy, or from the flow of the conversation in the record. Further, the record reveals the ALJ repeated the limitation to nonpublic work, to clarify that limitation included a restriction to limited contact with peers and supervisors.  Had he not done so, the restriction to limited contact with peers and supervisors would not have been clear from the earlier conversation.  Plaintiff argues that the VE did not understand the hypothetical to include a limitation to simple, repetitive work , because the VE included a responsive job which requires a reasoning level of three which is inconsistent with simple, repetitive tasks.  (Reply 7) (citing Hackett, 395 F.3d at 1176).

As the Commissioner points out, the court in Hackett found a limitation to "simple and routine work tasks" was inconsistent with level three reasoning.  Hackett, 395 F.3d at 1176.  However, "routine work tasks" are not identical to "repetitive work," and neither this court nor Plaintiff's counsel is a vocational expert qualified to ascertain the reasoning

level required of either. In these circumstances, the fact that the VE opined that Plaintiff

was able to perform a job allegedly requiring level three reasoning (at least in many

cases) simply will not support a finding that the VE understood the hypothetical in a

manner contrary to the plain language used and the natural understanding of the colloquy.

Finally, the hearing transcript as quoted above reveals that the fourth hypothetical

included all limitations, including physical limitations, in the RFC assessed by the ALJ.

Plaintiff has shown no error in her claim that the hypothetical question did not relate with

precision all of Plaintiff's limitations.

In her second allegation of step-five error, Plaintiff claims the VE testimony was

not consistent with the Dictionary of Occupational Titles (DOT), and the ALJ did not ask

the VE whether there were any conflicts, and did not obtain a valid explanation for any

conflicts identified. (Pl. Br. 31-33). The Commissioner argues that "the ALJ asked the

VE to explain any inconsistencies between her testimony and the DOT," and the VE did

not identify any such inconsistencies. (Comm'r Br. 24). Further, the Commissioner

argues that although it might appear the DOT is inconsistent with the VE testimony, each

of the jobs suggested by the VE, except one, are really consistent with the DOT, and

those jobs comprise a significant number of jobs in the economy upon which the ALJ

appropriately relied. Id. at 24-25.

As the Commissioner's brief suggests, the ALJ stated, "I specifically asked the

vocational expert to note and explain disagreements, if any, with the provisions of the

Dictionary of Occupational Titles (DOT), and the vocational expert did not indicate any

such disagreement." (R. 21) (citing SSR 00-4p). Later, he found that the VE testimony

"is consistent with the information contained in the Dictionary of Occupational Titles."

(R. 22). Plaintiff reiterates in her reply brief that the ALJ did not ask the VE if her

testimony conflicted with the DOT, and did not ask the VE to explain the apparent

conflicts. (Reply 7). She argues that although the ALJ did ask the VE to base her

answers on the DOT and any related documents unless the VE told the ALJ otherwise,

that instruction "does not fulfill the ALJ's duty to inquire about any conflicts and to elicit

a reasonable explanation for such conflicts." Id. at 8 (citing Haddock, 196 F.3d 1084

(without pinpoint citation)). The court agrees with Plaintiff.

In Haddock, the Tenth Circuit decided that before an ALJ may rely on VE

testimony, he "must investigate and elicit a reasonable explanation for any conflict

between the Dictionary [DOT] and expert testimony." Haddock, 196 F.3d at 1091. The

court further explained that the DOT does not "trump" VE testimony. Id.

About six months later, the Commissioner published Acquiescence Ruling 00-

3(10) in which she explained that she would apply the holding of Haddock within the

Tenth Circuit although that holding conflicted with her interpretation of the Act. In

another six months, the Commissioner published SSR 00-4p, effective December 4, 2000.

West's Soc. Sec. Reporting Serv., Rulings, 242 (Supp. 2009). In SSR 00-4p, the

Commissioner rescinded Acquiescence Ruling 00-3(10), and established a policy

interpretation for the use of VE testimony and "Other Reliable Occupational Information

in Disability Decisions." Id. at 243. In the ruling, the Commissioner placed two duties

19

on the ALJ.  First, the ALJ must "identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the Dictionary of Occupational Titles (DOT), including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO)." Id. (emphasis added).

Second, the ALJ was given the duty to "[e]xplain in the determination or decision how any conflict that has been identified was resolved." Id. [Social Security] Ruling 00-4p places the affirmative responsibility on the ALJ to "[a]sk the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT," and where VE "evidence appears to conflict with the DOT, . . . [to] obtain a reasonable explanation for the apparent conflict." Id. at 246.

It might be argued that the ALJ's duty to identify conflicts between VE testimony and the DOT is fulfilled by instructing the VE to inform him if her testimony is not based on the DOT and related documents (and the Commissioner's brief at least implies that he believes the duty is fulfilled by such an instruction).  In such a case, it could be argued that the VE's failure to identify a conflict may be taken by the ALJ as affirmative evidence there is no conflict, and that he has fulfilled the requirements of SSR 00-4p.  In fact, that appears to be the rationale upon which the ALJ relied in this case.  (R. 21, 22).

While the court tends to believe this rationale is insufficient even to fulfill the requirements of SSR 00-4p, it need not decide that issue here, because the holding of Haddock is binding upon this court as the law in this Circuit, and it requires more.  As the

20

court quoted above, the <u>Haddock</u> opinion requires an ALJ to "investigate and elicit a reasonable explanation for any conflict between the Dictionary [DOT] and expert testimony." <u>Haddock</u>, 196 F.3d at 1091. The <u>Haddock</u> court recognized that "the ALJ bears the burden at step five to show that there are jobs in the regional or national economies that the claimant can perform with the limitations the ALJ has found him to have. It is not the claimant's burden to produce or develop vocational evidence at step five." <u>Haddock</u>, 196 F.3d at 1088 (citations omitted) (citing <u>Thompson</u>, 987 F.2d at 1487, 1491). The court recognized that a Social Security hearing is a non-adversarial proceeding and that it is the ALJ's duty, at whatever step in the evaluation process, to develop the record. <u>Id.</u> 196 F.3d at 1090-91. It noted that requiring the claimant to cross-examine the VE "would amount to shifting the burden to produce and develop vocational evidence back to the claimant." <u>Id.</u> at 1090.

The ALJ's instruction to the VE to inform him if her testimony is not based on the DOT and related documents, and his finding that there is no conflict based upon the fact the VE did not inform him <u>sua sponte</u> of any conflict, is insufficient to meet his duty to investigate and elicit a reasonable explanation for any conflict as that duty is described in <u>Haddock</u>. The court does not hold here that the ALJ must question the VE regarding each aspect of every relevant job description from the DOT and the SCO. However, to meet the requirements of <u>Haddock</u>, he must at the least inquire of the VE expert whether her testimony as presented at the hearing is consistent with the DOT and the SCO, and, if it is

not, must elicit a reasonable explanation for the conflict. His failure to do so in this case is error requiring remand for a correct application of the court's holding in <u>Haddock</u>.

Having found reversible error in the Appeals Council's reliance upon the erroneous findings of the ALJ, including an RFC assessment which is not supported by substantial evidence in the record as a whole, and the ALJ's failure to investigate and elicit a reasonable explanation for alleged conflicts between the DOT and the VE testimony, the court will remand for further proceedings consistent with this opinion. It need not consider Plaintiff's remaining arguments, as she may make them to the Commissioner on remand. Plaintiff has also requested that the court remand for an immediate award of benefits, but she provided no argument supporting such a course of action, and has thereby waived that argument. <u>Wall</u>, 561 F.3d at 1066 (undeveloped issue is waived); <u>Franklin Sav. Corp. v. U.S.</u>, 180 F.3d 1124, 1128 n.6 (10th Cir. 1999) (arguments presented superficially are waived); <u>see also</u>, <u>Sports Racing Servs., Inc. v. Sports Car Club of America, Inc.</u> 131 F.3d 874, 880 (10th Cir. 1997) (dismissing claims which were never developed, with virtually no argument presented); <u>and</u>, <u>Ortiz v. Apfel</u>, 39 F. Supp. 2d 1275, 1285-86 (D. Kan. 1998) ("Parties may waive issues, arguments, and objections by not presenting them to this court.").

**IT IS THEREFORE ORDERED** that the Commissioner's decision is REVERSED, and that judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

Dated this 3rd day of November 2010, at Kansas City, Kansas.

 s/ John W. Lungstrum                    
**John W. Lungstrum**
**United States District Judge**